Good morning, Your Honors, and may it please the Court, my name is Kieran Bott, and I represent the appellant, Kiana Jones, and I'd like to reserve three minutes for rebuttal, please. The District Court erred in two ways in denying Ms. Jones's Section 4 petition. First, it failed to see that the plain text of the contract requires an arbitrator, and not a jams administrator, to decide in a threshold interpretive dispute over how merits arbitrations should proceed. Second, assuming Starz's textual interpretation is correct, the District Court abused its discretion by effectively enforcing a contract that is unconscionable under California law. It should have instilled respect to the party's overarching intention to arbitrate, and resolved doubts in favor of arbitration by severing the offending provision, Jam Rule 6E, which under Starz's reading, delegated key and weighty legal decisions improperly to an administrator, and created a non-starting process. Whether on the first or second round, this Court should reverse and compel Starz to proceed individually with Ms. Jones before the arbitrator, whom the contract empowers to decide both threshold questions around consolidation and the merits. Today I'd like to start with an explanation of why this Court has a role to play in this dispute, and why it was improper for the District Court to simply send the matter back to jams. Courts always have a role to play in deciding how delegated threshold disputes are arbitrated, and we see this in cases as recently as Hackman, in which this Court looked at the validity of a delegation clause. We also see it in cases like Patrick and Muhammad, in which courts look to the contract, interpret the contract, and determine whether the parties have a clear and unmistakable intent. Supreme Court's made it pretty clear our role is limited, so the fact that we have found instances where the Court does have grounds to get involved doesn't suggest that's the default case, or the usual case. In fact, Supreme Court's made it pretty clear that most, or at least many, objections to arbitrations don't wind up getting resolved in court. And here we have an agreement where jams' rules, which are written into the agreement, provide for a system of resolving disputes. I'm kind of puzzled as to why it is. Indeed, I'm sort of puzzled, like a big picture. This is a data breach case, right? Why hasn't it already been arbitrated? Why would, what's taking so long? The terms in this case, STARS' terms of use, are between Kiana Jones and STARS. And 7,000 other people, apparently represented by your firm, who have made the same complaint. That's correct, Your Honor, but it doesn't change the fact that the contract is between Ms. Jones and STARS. And that there are identical contracts with 7,000 plus other people who apparently brought identical claims represented by your firm. That's right. And so why hasn't, I mean, you could have gotten a result months, maybe years ago. I can't help but feeling that your office doesn't really want a merits result. It wants to tie up the system into a knot and make it so burdensome that STARS will capitulate because of the cost of the process, rather than attaining a result in front of a neutral arbitrator, as set forth in the agreements. So why don't we have an agreement? Why don't we have a result based on that agreement? Your Honor, because the terms provide for individual arbitration. Well, where do they provide for individual arbitration? The terms themselves in Excerpts of Record 496 state that arbitration shall be in an individual capacity, and then turning to the JAMS rules. Well, but it can be a class capacity, but it doesn't say it can't be in a consolidated capacity. And the JAMS rules, which are written into the agreement, provide for consolidation. They provide for consolidation, Your Honor, but they don't provide for JAMS administrators to decide at the threshold. Well, actually, I think they sort of do. Rule 1 provides for decisions to be made before an arbitrator has been selected. Your Honor, JAMS. Why should the, no court would stand for 7,000 separate lawsuits. Why should we expect JAMS to stand for 7,000 separate arbitrations? Your Honor, the contract between the parties incorporates JAMS Rule 6e. JAMS Rule 6e specifically provides that unless the terms and the law provide otherwise, JAMS has the authority to consolidate. Now, the parties delegated interpretive disputes, including disputes over who are the proper parties to the arbitration, to the one neutral arbitrator that's defined under JAMS Rule 7. What about JAMS Rule 1? JAMS Rule 1 provides that the National Arbitration Committee. Where the Office of JAMS General Counsel are their designees. Administers the arbitrations, but the arbitrations themselves are handled under Rule 7 by the one neutral arbitrator. What I'm not hearing is an explanation as to why your office preferred 7,000 separate arbitrations. Yes. Rather than get a result on the merits. So I think the Supreme Court has actually been quite clear on the benefits of individualized bilateral arbitration as opposed to aggregative arbitrations. And one of those issues is you can imagine a world in which a claimant brings an individual claimant. This is a statutory penalties case. The VPPA is a statutory penalties statute. And $2,500 per violation is what the statute provides for. You can imagine a world in which an arbitrator, an individual arbitrator, is more likely to award an individual that $2,500 than if there is a massive consolidated arbitration in which 7,300 individuals are all seeking the same relief. And the award goes up, not great at math, but to a significant degree. And the Supreme Court has recognized this, right? It's just a shoe on the other foot of the concepcion analysis of the commercial stakes are raised for corporate defendants when corporate defendants are faced with class arbitration. The inverse is true here. But this isn't class arbitration. This is consolidated arbitration. That's not the same. Right? And this Court recognized in Heckman just a month ago that aggregation in arbitration is what the Supreme Court has disparaged. And the Supreme Court itself, in Viking River Cruises, has explained that class arbitration is not the only type of arbitration that the Federal Arbitration Act didn't envision in 1925, that Congress didn't envision in 1925. That case involved PACA. And PACA has a provision that allows an individual to bring claims against many other people on behalf of the state. And the Supreme Court explained that that expansive rule of joinder was incompatible with the traditional individual bilateral form of arbitration that the FAA protects. And so, respectfully, Your Honor, I would say that aggregative arbitration is the issue. It's not so much class arbitration or representative arbitration in isolation. It's that any of these changes from the traditional bilateral format that's the prototype under Viking River Cruises of what the FAA protects brought the same changes. And so there is a legitimate justification. These were brought as lawsuits. Do you think there's any court that would tolerate having 7,000 separate cases tried separately? Your Honor, that's what the parties agreed. This is something that STARS has imposed on its individual consumers every time they sign up for an account. Your answer to my question is no. You know that no court would stand for that. I acknowledge that, Your Honor. That's what the parties agreed. And arbitration is a creature of contract. The parties here have agreed to a contract that provides for individual bilateral arbitration and a contract in which threshold disputes are determined by an individual arbitrator. Let me go back. Go ahead, Judge. That's cool. I have a question. Yes, Your Honor. I have a question or two for you. First of all, once there's a consolidation of 7,000 individual claims, am I right that the contract terms would permit any one of those 7,000 people to object to the identity of the arbitrator? Yes, Your Honor. I think the issue here is that that right necessarily impacts the rights of other claimants. And so when JAMS decided, the answer to your question is yes, that is correct. But the issue is that STARS then submitted to JAMS that one individual's disqualification should serve as a disqualification for all of the consolidated claimants. And so that effectively blocked the arbitration from proceeding. The threshold dispute of whether consolidation is the appropriate way to resolve the merits of the case ended up never having an individual arbitrator in which it could go before. Let me follow up with that. Class actions are not available here because the provision states, you and STARS agree that each may bring claims against the other only in its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. And I think we all agree there's no class proceeding at issue here. When JAMS consolidated 7,300 cases, does that take on the nature of a representative proceeding or is that still a different term in your view? In theory, it is technically 7,300 separate individual bilateral arbitrations even as a consolidated proceeding. So I wouldn't call it a representative proceeding necessarily. But I think in Heckman, the court made clear that even if you call something representative, it's not sort of a talismanic marker. The issue in Heckman, or one of the issues in Heckman, was that you had this possibility that there would be binding decisions that would bind one individual and also bind later filed individuals or bind individuals in the same batch. Which I think in that sense, this looks a lot like a consolidated, or excuse me, a representative proceeding. I mean, that's what I thought. Because if the nature of the efficiencies to be gained by consolidation is that there's this common question about whether there was a statutory violation, that arbitrator would presumably be focused on one case, perhaps as a bellwether, with a broader impact on others. Is that a representative proceeding of a kind? Or should we think of this differently? No matter how many numbers of people, you can consolidate and it's still not representative. I think it's a great point. And it's a semantic difference, a distinction, I think, without a difference. Well, it's not semantics because either the terms of use prohibit it or they don't. And so I guess really what my question is getting at is, is there a potential or inherent conflict between the JAMS rules permitting consolidation on a massive scale versus the parties agreeing to no representative proceedings? I guess that's really what I'm trying to get at. Right, Robert. I do think that a large consolidated proceeding does run a really significant risk. It's common for representative proceedings that one case will decide another case. And how do the cases differ? This is a day-to-day breach case. How do the cases differ? The facts of each individual case will vary wildly, because you'll end up with a situation where each individual person has watched it different times, different numbers of videos. And so there are significant factual distinctions and those for down-to-discovery and the like. But you're seeking statutory remedy, a statutory penalty. I'm at a loss as to what impact the individual differences will have on the arbitration. For example, the number of violations, Your Honor. So one individual might have watched multiple videos in which data was transmitted through the Metapixel, and others might have only watched one. So there are going to be variances necessarily between those cases. I'll reserve some time for rebuttal. Thank you, Your Honor. May it please the Court. My name is Jeffrey Sy on behalf of Respondent Stars Entertainment. From the day counsel for petitioner submitted her arbitration demand, along with the 7,281 other arbitration demands, Stars has directly engaged in the arbitration process. And the company has been ready to commence the substantive arbitration phase from that first day. The real problem is that have animated other arbitration situations. When applied here are purely artificial. And I think some of the questions that the Court is engaged in reflect much of that artificiality as applied here. The real gating question for this Court, we would respectfully submit, is in a situation where arbitration is already underway, whether the FAA permits a party to refuse to abide by the decisions made in arbitration because she disagrees with those arbitration decisions and instead use the federal court system to seek to compel arbitration that are simply only on terms that she agrees with. Mr. Sy, let me ask you this just to make this clear cut, at least for me. If the terms of use had said no class or representative or consolidation and then Stars asked Jams to consolidate and Jams does consolidate, would Ms. Jones be an aggrieved party in that instance where there's an express conflict going on here or not? Fundamentally, the question would be one that's reserved in that instance for the arbitrator to decide, which incidentally is still acquired because if the arbitration agreement provides for an agreement to arbitrate under a certain set of circumstances provided for in the agreement, not on a class basis, not on a representative basis, and in my hypothetical, not through consolidation, isn't that now a gateway question as to what the parties have agreed to arbitrate to? Respectfully, no. In arbitration law, when the courts have spoken, including in this circuit, about the notion of arbitrability, it speaks of that question about whether the parties have agreed to arbitrate a question. The separate question of how the parties have agreed to arbitrate is a question that's reserved for the arbitrator itself. That distinction is pretty key because the issue of when the courts are authorized to come in relate to what the courts have referred to as merits-based questions. That's the question of arbitrability. In that instance, the question of whether the parties have agreed to arbitrate would be something for the court. But when it relates to whether the parties have agreed to arbitrate in a certain manner, that ultimately is for the arbitrator to decide. But I will say, Your Honor, the gateway question, if James decided out of the blue to say, let's structure this in a class action format, if an individual person couldn't go into federal court and say, I never agreed to arbitrate under these terms, I'm an aggrieved party under Section 4 of the FAA, you're saying even that, no matter what, even if it's just a blatant contradiction from what the agreement to arbitrate was, that is reserved for James and the court would have no jurisdiction to review that issue? It fundamentally first depends upon whether it is a merits-based question. Ultimately, if the question, including Your Honor's question, about whether it has a specific provision for consolidation or not, it is ultimately a question that would have to be decided first by the arbitrator if there is no dispute as to whether the question, the issue, is whether the parties have agreed to arbitration in the first place. And to be clear, in our circumstance, there is no debate that the parties have agreed to arbitrate and are arbitrating. So the question then becomes that gating question, which I would submit to the court as the true question, is whether or not in a situation where the parties are already underway, which is this case, in arbitration, does the FAA permit that party to nevertheless be an aggrieved party? We would submit no, and that's why we believe the court should affirm Judge Canto's decision in that regard. But even if the court were to delve into the terms of use and the rules, there are three issues that were discussed here today that I think are worth mentioning with respect to why the court would still affirm, the first of which is consolidation. Judge Sanchez, to the point, I think, partly of your question, consolidation is a procedural issue, and that part is important that Jams specifically was entitled to decide, and it's that kind of procedural question that is not exclusively reserved for a court or even, as we'll talk about in a few minutes, a human arbitrator himself or herself. Second, consolidation is permissible under the law, and the parties otherwise consented to it in this case. And third, to the extent that the court addresses the notion of unconscionability, as my friend mentioned, the terms of use here are not procedurally or substantively unconscionable. I want to just briefly, if I may, before I turn to those three primary buckets, address that issue that I referred to as that gating question. And it is this notion fundamentally that Section 4 does require this notion, that a party has refused to arbitrate, which is not the case here. In this court, because of that, need not go any further. The true issue here and the true dispute is that she does not agree fundamentally, the petitioner, with the decision that has been made so far in arbitration. But that is the decision. Could you answer whether you think a mass consolidation of cases like this, the money over $7,000, whether you believe that that might be perceived as a representative proceeding or not, and if not, why not? It is not a representative proceeding for a couple of reasons. The first of which is that the notion, including how the Supreme Court, this circuit, as well as others have talked about it, is that representative proceeding necessarily deprives a party of specific representation in a proceeding. That is exactly the kinds of issues that the panel took issue with in Heckman against Lack Nation. None of those conditions are problematic here. Consolidation is not a specific and necessary feature of class actions. They are, in fact, a procedural mechanism that even the Court of Appeals uses for purposes of procedurally and administratively moving efficiently cases along. That itself does not make something representative. So the mere what my friend referred to as this kind of talismanic notion of what something is, it is true that the mere term consolidation cannot be construed to be representation because, as cases like Viking River Cruises have made quite clear, this notion of bilateral arbitration, that shibboleth bilateral arbitration, as the Court referred to in Viking River, is not, as the Court said, two and only two parties in their individual capacities. The Court there was referring to this idea that bilateral arbitration can include many things more than just one against one, and it is contra, it is opposed to, class arbitration because class arbitration is truly a representative proceeding. Let me ask this because I don't believe the point of consolidation here is that the arbitrator is not going to delve into the facts of 7,000 different cases, but will intend to reach common questions of law and fact, and specifically maybe the statutory violation issue and whether it's liable or not, and whatever resulting decision would have an effect on a large group of cases, the consolidated cases, if not broader. Why isn't that representative in a sense? I mean, I think one might be able to find cases that talk about, well, no other cases as being representative for others. It's not representative, Your Honor, because it does not fundamentally deprive each petitioner the opportunity to be heard. Now, as it turns out, each petitioner, each claimant, rather, is represented by the same counsel, but the decision of how administratively the arbitrator in this case will potentially resolve any given issue is ultimately going to be one that that arbitrator must decide. And I will note, unlike, most importantly, a case like Heckman against Live Nation, there are no rules that are in place that have already specifically deprived a claimant, including a petitioner in that case, a petitioner in this case, from having that representation. Those were the specific factual issues that the court there found in the terms, in the rules themselves, that are not present here. Would this case be different if, let's say, there were 20 different plaintiff's law firms and a set of claimants under separate representation, and those individuals don't want to consolidate because they want to have their attorneys litigate their claims. And if jams consolidated and with the intended impact that whatever ruling they make in this one case might have effect on these other claimants, would we be in a different situation than in your view? We would not. We would not because fundamentally, and these, I think, are the things that should tether the court to this reason, is that every claimant fundamentally will still have the opportunity to be heard, which is contra to what the court found in Heckman. Every claimant... Judge Gould, if I can ask you a question, please. Certainly, Your Honor. You said in your answer earlier to one of the questions that the arbitration is underway. I want to know how far underway it is. Has an arbitrator ever been selected is one question I have. And second, if there are 7,000 consolidated claimants and any one of them can disqualify an arbitrator, how will there ever be an arbitrator to proceed in the arbitration? Thank you, Your Honor. The answer to Your Honor's first question is that an arbitrator has not yet been selected because petitioner as well as other claimants have objected to every arbitrator who has been proposed so far by JAMS. That does, in part, at least answer the court's second question, which is every single claimant at some point in time has objected to one of the arbitrators who's been appointed by JAMS. Every single one. And that itself illustrates that the core question the court in this context is looking at as to whether the petitioner has been deprived of any of her rights under law, the answer decidedly to that question is no. Every claimant, including petitioner, has the right under California law to disqualify an arbitrator and, in fact, has done so. And JAMS at this point has directed the parties to appeal to the Superior Court for the appointment of an arbitrator. I will note that has not happened yet, although petitioner has the right to do it. That itself, I think, is illustrative of the fundamental issue, as I think Judge Clifton mentioned, as to whether or not there is an effort not to resolve these questions on the merits but rather to stymie it. As to the other part of Judge Gould's question, this will be, Your Honor, resolved. The reality is the law provides for every claimant in this case to be able to object. That will happen. What requires then at that point, as JAMS has directed, is for the parties to then appear to the Superior Court to seek the appointment. And, oh, finally, note in that regard, under California law, California law provides for consolidation in arbitration, Section 1281.3, which it also illustrates that consolidation is something that the law supports and, in this instance, is one that would allow for, ultimately, the arbitrator to be appointed. Some of the issue I will note, I've not gated quite enough on that. Certainly, the arbitrator is appointed by the Superior Court. It's my understanding, and I'm not a California lawyer, so that's why I'm turning to you. I understand there are peremptory challenges permitted under the California statute, but it's also my understanding there's one. And after that, the Superior Court can say this John Doe is the arbitrator. Is that the case? That is the case, Your Honor. That is itself a provision of 1281.91, and that after the peremptory strikes, essentially, are made by a claimant, at that point, any other objection that's made to disqualify would have to be won for cause. That's correct. One of the final points I'll make, for your honors, and I apologize for continuing to go back to the gating question, but I want to leave the Court, at least in that regard, with this. This notion of whether or not a party in this specific context can be considered aggrieved, I would urge the Court to look at those circumstances, such as the one in Jacobs against USA Track and Field, which is a sister decision, or at least a decision from a sister court in the Second Circuit, where the Court addressed this precise scenario, the precise scenario where a petitioner did not like the decision by an arbitrator's administrative arm, AAA in this case, about the application of certain rules in a doping case. It was a track star in a doping case. The Second Circuit, in that case, specifically found that a party's objection to, in this case, the application of certain rules is not the equivalent of a refusal to arbitrate. The final point I'll make, which hopefully is, to Judge Clipton's point earlier, this notion of the big picture, is that, fundamentally, the law, both California law and federal law, and it's reflected in numerous different cases, encourages the consolidation of arbitration. Those are cases like Compañía Española, another Second Circuit case, but also the Viking River Cruises case that was mentioned before. And all of those would lead to, we believe, the Court affirming Judge Cato's decision, because there is no basis to find that it is either unlawful in the first instance, that it is not allowed by JANS to make that decision, and if there is a question, a problem with what's happening, that is for the arbitrator, ultimately, to decide, because it's what the parties agreed to do. If there are no additional questions, then I want to thank the Court for its time this morning. Thank you, Counsel. The Honors, I'd like to start by addressing the Jacobs case. Jacobs involved a disagreement over which rules the parties had incorporated into their agreement. Here, the parties agreed which rules applied to the JANS rules, and JANS administrators exceeded their authority by deciding a disputed consolidation in violation of those rules. And I'll explain why this is important. JANS administrators had no authority under the rules to make a threshold determination about consolidation. That was for the individual arbitrator. Stars and my friend have come today to argue that there's no distinction between what the administrators did here and what Ms. Jones is asking for, which is the right to go before an individual arbitrator on a threshold dispute. Now, I want to also be clear about what Ms. Jones is not asking for, and I think this goes to the questions that Judge Sanchez has asked. She is not asking for this Court to decide that consolidation is inappropriate in all circumstances. That is for the arbitrator. The parties agreed to that. But an individual arbitrator is what the TOMS and the JANS rules require for the decision on that threshold dispute, and it goes frankly. I'm not so sure that's the case, but it also sounds like chicken and egg. If the objections serve to prevent an individual arbitrator from being identified, then how does that not simply thwart the process from proceeding? Your Honor, the individual consumers all have the right to disqualify, and they have. If my friend came here today and said that if Ms. Jones petitioned under 1281.6, which is the California statute that permits a court to appoint an arbitrator, and that they would then proceed to an individual arbitration with Ms. Jones, I don't think we'd have any issue. I think we'd be done here. The issue is that the consolidation is completely different. So there's an individual arbitration as you define it, or you're not prepared to play ball, you're not prepared to go to superior court? Your Honor, the issue is that if I'm hearing a yes to that question, we will argue, if we have to, that an individual arbitration is what's required when that arbitrator is appointed. But I don't think that that's what STARS is going to agree to. I think the issue is the JAMS. Well, we've already got the agreement. We're now in a place of implementing the agreement. We've got the JAMS rules that have been agreed to, but we have a contractual term that doesn't say, unlike Heckman, no individual arbitration. It says the potentially ambiguous phrase that Judge Sanchez was pointing to. And we're at a stalemate. We're not going any further. Why don't we go to superior court and let that process result in the appointment of an arbitrator? And you can make the argument to that arbitrator. It has to be one at a time. But we're stymied before then. I think it's frustrating. And I understand, and Judge Mitchell, I understand, but I think the issue is that the decision has been predetermined at this point, and JAMS didn't have the authority to make that decision. Oh, that's true. That's true. But if you're right about that, then presumably the superior court is the one that can deal with it. And, yep, you're here. You're not in front of the superior court. And as a practical matter, Your Honor, I think we'd be making the same arguments, the superior court that we've made to this court, which is that the only appropriate resolution to this situation is that an individual arbitrator decide the threshold dispute as to how the marriage should proceed. And that's under the terms of the content. How does that represent a refusal by STARS to arbitrate? It is a refusal. You can imagine a scenario, Your Honor, in which the parties have the same claim. The parties have a dispute over how the claim should proceed on the merits. Say Ms. Jones believes there should be an individual arbitration, and STARS believes, to take the example from Heckman, that the marriage should be decided by a game of ping-pong. Now, Ms. Jones calls to JAMS and requests that pursuant to the contract, an individual arbitrator decide that threshold issue of how the merits are decided. And STARS writes JAMS and says, Now, actually, the threshold dispute needs to be decided by a game of ping-pong as well. And in that case, you've got a refusal by STARS to proceed. But I don't see that here. I see here a process by which the California law provides you can go to superior court to proceed, but it's not STARS that's saying don't go to superior court. It's apparently your client electing not to take the available route. So how is that a refusal by STARS to arbitrate? Which is what the Federal Arbitration Act keys on. Taking it, Judge Clifton, that you don't necessarily agree with the textual interpretation that Ms. Jones has advanced, I think the first answer would be that the text is what's important. And so the text requires the arbitration. The text of the JAMS rules, JAMS rules 6C, JAMS rule 11, the text of the Federal Arbitration Act, the premise of your current action is that a party, STARS, has refused to arbitrate. Am I missing that? In accordance with the terms of the agreement. That's right, Your Honor. The terms of the agreement provide for an individual arbitrator to resolve the dispute. I'm like Heckman actually doesn't say that. It says no class or representative, but it doesn't say it has to be an individual arbitrator. I think the features from the alternate and independent ground portion of the Heckman decision is what we're relying on, Your Honor. So in Heckman you have the alternate and independent ground, the aggregate of arbitration, the arbitration that has these features. Can I ask you a clarifying question from your colloquy with Judge Clifton? Is it your view that a superior court could decide the issue of whether claims should be consolidated or not? I thought the narrow authority would be to pick an arbitrator. Is there something broader that the superior courts could step in and do? I think that the statute allows for the appointment of an arbitrator, and we would then have to argue to JAMS that an individual arbitrator. To that arbitrator? You've got an arbitrator once appointed by the superior court. Why doesn't the argument belong there? Because the consolidation has been predetermined in violation of the terms. And you can argue to the arbitrator that these have to be taken up one at a time. And the default rule is just different. The terms of the warrant provide for an individual arbitrator who can decide to consolidate individual cases as appropriate. They don't provide for a situation in which Ms. Jones has to go in with 7,300 others and then argue against consolidations. But there's a process where you can have an arbitrator. You're saying this decision has to be made by an arbitrator. I don't understand why that arbitrator can't resolve the issue that you insist has to be resolved by that person. Your Honor, I'll just rest on the textual arguments that we've made about the contract as well as the— and I'll rest on the observation. It seems to me you're more determined to block a resolution than to obtain one. And I haven't heard anything that explains differently. If that arbitrator appointed by the superior court could deal with the question, what's the problem? And I shared some—I don't mean to interrupt you or even answer, but I wanted to let you know. I shared some of the concerns. Judge Clifton has voiced, and I'm sitting here wondering, why isn't this going forward on a motion to the superior court? Because surely a superior court would have a right to issue an order to say that any objections to an arbitration are required within a short time period. Somehow or another, this has got to get on track so an arbitration proceeds. That we agree with, Your Honor. I think the issue is that Ms. Jones' position is that individual arbitration is what's appropriate. And with that, I thank the court. Actually, let me—could an arbitrator, once appointed, decide to reverse the decision to consolidate? Under JAMS Rule 11, I think the answer to that is yes. Well, then doesn't that resolve this? Because ultimately, an arbitrator could make the decision that you think that should have been made by an arbitrator in the first place. So it's not the end of the road in terms of consolidation if you have an opportunity to make that request to an arbitrator. And I'll go back to my earlier answer. I think that the configuration is important. Because in that situation, you have a completely different scenario than what the terms contemplate, which is that the individual arbitrator makes the threshold determination of whether consolidation is appropriate and not the threshold determination of whether other parties can be deconsolidated. I think the configuration does make a difference. That's all your opportunity. Thank you, counsel, for your helpful arguments. The matter was here submitted, and court is adjourned.
judges: GOULD, CLIFTON, SANCHEZ